Daniel O. Ajeigbe (281086)
Law Office of Daniel O. Ajeigbe
5974 Arlington Ave
Riverside, CA 92504
951-805-7414
AjeigbeLaw@Gmail.com

Attorney for Plaintiff,

VENESSA KING, individually and as the successor in interest of EDWIN HOTMIRE, Deceased

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| VENESSA KING, individually and as the successor in interest of EDWIN HOTMIRE, Deceased, | Case No. 5:15-cv-00753 |
|---|---|
| Plaintiff, | **COMPLAINT FOR NEGLI GENCE; WRONGFUL DEATH; MEDICAL MALPRACTICE; INFLICTION OF EMOTIONAL DISTRESS AND SURVIVORSHIP** |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Plaintiff, VENESSA KING, by her attorney DANIEL O. AJEIGBE, complains of defendant, UNITED STATES OF AMERICA, and respectfully alleges:

COMPLAINT - 1 -

INTRODUCTION

1. This is an action against the Defendant United States of America under the Federal Tort Claims Act, (28 U.S.C. §2671, et seq.) and 28 U.S.C. §1346(b)(l), for negligence, wrongful death, and negligent infliction of emotional distress in connection with negligent medical care provided to Edwin Hotmire by the US Department of Veterans Affairs at the VA Loma Linda Healthcare System.

2. The claims herein are brought against the Defendant pursuant to the Federal Tort Claims Act (28 U.S.C. §2671, et seq.) and 28 U.S.C. §1346(b)(l), for money damages as compensation for wrongful death and other damages caused by the Defendant's negligence.

3. Plaintiff has fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims Act by submitting Standard Form 95 to the United States Department of Veterans' Affairs.

JURISDICTION AND VENUE

4. This court has jurisdiction under 28 U.S.C. § 1331. Jurisdiction for this action is proper under the Federal Tort Claims Act of 1948, 62 Stat. 982, 28 United States Code §§ 1346(b), 2671 et seq.

5. As required by 28 U.S.C.A. § 2675, the Plaintiff initiated an administrative claim by mailing Standard Form 95 for a sum certain amount of $1,500,000.00 and supporting documents to the United States Department of Veterans' Affairs on July 19, 2014 addressed to the Department of Veterans Affairs, Office of Regional Counsel, Joyce Lewis-Barrett, in San Francisco, CA. Receipt of the claim was made by the Department of Veterans Affairs on July 21, 2014. More than six months have

passed since that date, yet no final disposition has been received from the Department of Veterans Affairs. Plaintiff has deemed the lack of receipt of a final disposition of the claim as a final denial and as such brings this action.

6. Venue for this action is proper under 28 U.S.C. §l402(b) in that all, or a substantial part of the acts and omissions forming the basis of these claims occurred in the Eastern Division of the Central District of California.

7. At all times mentioned in this complaint, the Decedent and Plaintiff did reside within the boundaries of this division and district.

8. In this same division and district, at all times herein mentioned, defendant United States of America, through its agency, the US Department of Veterans Affairs, did and still does own and operate a hospital at 11201 Benton Street, Loma Linda, State of California, known as the VA Loma Linda Healthcare System.

## THE PARTIES

9. At all times pertinent thereto, Decedent Edwin Hotmire was a veteran of the United States Navy and entitled to medical coverage at the defendant's Veterans Affairs facilities including said VA Loma Linda Healthcare System.

10. Plaintiff Venessa King is the sole beneficiary of Decedent Edwin Hotmire's will and is the beneficiary of decedent Edwin Hotmire's estate and as such she is authorized under the California Code of Civil Procedure § 377.30 to present this claim based on the death of Decedent Edwin Hotmire as she is the Decedent's successor in interest under California Code of Civil Procedure §§ 377.11 & 377.10 and succeeds to the decedent's interest in the action or proceeding. (Exhibit "A")

11. Plaintiff declares that no proceeding is now pending in California for administration of the decedent's estate.

12. Plaintiff declares that no other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding.

13. Defendant United States of America, including its directors, officers, operators, administrators, employees, agents, and staff at the VA Loma Linda Healthcare System are hereinafter collectively referred to as "VA Loma Linda Healthcare System."

14. All of the acts and omissions herein complained of occurred on the premises of defendant's said VA Loma Linda Healthcare System.

15. At all times relevant to this Complaint, the Loma Linda Healthcare System held themselves out to Mr. Hotmire and the Plaintiff, as a provider of high quality health care services, with the expertise necessary to maintain the health and safety of patients like Mr. Hotmire.

16. At all times relevant to this Complaint, the directors, officers, operators, administrators, employees, agents, and staff were employed by and/or acting on behalf of the Defendant. Furthermore, the Defendant is responsible for the negligent acts of their employees and agents under respondeat superior.

17. Plaintiff is ignorant of the names and capacities of DOES 1 though 50 and sues them as DOES 1 through 50, inclusive. Plaintiff will amend this action to allege these DOE Defendants' names and capacities when ascertained. Each of the

defendants herein is responsible in some manner for the occurrences, injuries, and damages herein, and the damages were directly and proximately caused by these defendants' acts and omissions. Each defendant herein was the agent of each of the remaining defendants, and in doing the things alleged herein were acting within the course and scope of their agency.

18. All defendants collectively, including VA Loma Linda Healthcare System, and DOES 1-50 are referred to herein as "DEFENDANTS."

## FACTUAL ALLEGATIONS

19. Upon information and belief, it is alleged that all of the healthcare providers mentioned in this Complaint were employees of VA Loma Linda Healthcare System, and at all times mentioned were acting within the course and scope of their employment with defendant.

20. On April 4th 2013, Edwin Hotmire a 74 year old male, underwent an artery bypass at the VA Loma Linda Healthcare System to treat longstanding non-healing ulcers of his lower extremities.

21. Mr. Hotmire experienced a myocardial infarction, commonly referred to as a heart attack, on April 5, 2013 and a second myocardial infarction occurred on April 15, 2013, which according to the autopsy report of Dr. Heather Rojas, was likely precipitated by a right groin hematoma with associated anemia. (Exhibit "B")

22. On April 16, 2013, Mr. Hotmire returned to surgery for evacuation of an expanding hematoma around the groin. A hematoma is defined as a localized swelling that is filled with blood caused by a break in the wall of a blood vessel. During the procedure to treat Mr. Hotmire's hematoma, 500 mL of blood was

evacuated. However, it appears that due to complications, Mr. Hotmire experienced low blood pressure which began to cause organ damage and required the administration of vasopressors in order to raise his blood pressure.

23. On April 18 2013 at 19:24, it was noted that Mr. Hotmire's urine output continued to be low, and discussions were started about initiating dialysis to treat this. Mr. Hotmire had delegated the authority to make medical decisions on his behalf to Venessa King as well as granted her power of attorney over his affairs.

24. Ms. King was briefed by Mr. Hotmire's doctors as to the urgent need for hemodialysis and she then gave her informed consent to the procedure. On April 19 2013 at approximately 18:00, Mr. Hotmire was administered the anticoagulant heparin for his dialysis catheter. However, the dialysis nurse did not communicate with the ICU nurse and physicians about earlier doses of heparin, and as a result, Mr. Hotmire was given an overdose of heparin.

25. In a document dated May 30, 2013 and titled "Institutional Disclosure of Adverse Event", Chief of Staff Dwight C Evans, M.D. stated in regards to the death of Mr. Hotmire, that "inadvertent doses of heparin were given…" to Mr. Hotmire as a result of "Communication issue whereby Dialysis nurse did not communicate with ICU nurse (and physicians) about earlier doses of heparin." (Exhibit "C")

26. Shortly after being administered this overdose of heparin, according to Dr. Stephanie Maroney, Mr. Hotmire began to experience bleeding from his nose as well as a large expanding hematoma in his neck which compromised his airway. At this time his right groin also developed a "large expanding hematoma with pulsatile bright red blood from the surgical incision" made earlier. By this time, approximately 1 liter

of his blood had pooled out onto the bed. (Exhibit "D": "Vascular Surgery Inpatient Note of Dr. Stephanie Maroney")

27. Mr. Hotmire continued to hemorrhage and Dr. Maroney applied pressure to his femoral artery in an attempt to reduce the blood loss. At 21:45 Mr. Hotmire was unresponsive and a Code Blue was initiated. Advanced Cardiovascular Life Support was initiated as well and a call to the blood bank seeking emergency blood for an emergency transfusion was placed.

28. Mr. Hotmire quickly deteriorated and his pulse was lost. According to Dr. Maroney, 30 minutes of Advanced Cardiovascular Life Support was performed while attempting to maintain control of the right femoral artery hemorrhage; however no pulses were able to be regained. Dr. Maroney stated that multiple attempts to call the blood bank were made, however the blood did not arrive prior to 2200, which was the time Mr. Hotmire was pronounced dead. (Exhibit "D": "Vascular Surgery Inpatient Note of Dr. Stephanie Maroney")

29. The report of the autopsy performed on Mr. Hotmire's body on April 24th 2013 concluded that Mr. Hotmire died from "acute hemorrhage from the nares and subcutaneous tissue of the right neck and right groin". (Exhibit "B")

30. Furthermore, the autopsy examination of Mr. Hotmire's body found:
   a. Dried blood in nostrils,
   b. Subcutaneous hematoma near the site of a catheter in the right neck measuring 6.0 x 5.0 x 1.0 cm,
   c. Subcutaneous hematoma along the right groin surgical incision site measuring 15.0 x 5.0 x 3.0 cm,
   d. Subcutaneous blood seen along the surgical incision of the right leg,

  e. The stomach contained approximately 200 ml of fresh clotted blood,

  f. Hematoma in the right groin measuring 15.0 x 5.0 x 3.0 cm,

  g. Hematoma measuring 6.0 x 5.0 x 1.0 cm surrounding catheter in right neck region,

  h. The hematoma of the right groin surrounded the graft vessels of Mr. Hotmire's recent bypass surgery; the bypass graft was grossly intact, with no perforations identified.

  i. Evidence of epistaxis and coagulated blood within the stomach were identified consistent with hemorrhage from the nose that had been swallowed.

  j. Bone marrow microembolus within the left lung lingua mocrovasculature, attributed to resuscitation efforts.

31. According to the document titled "Lessons Learned Regarding Use of Heparin" dated May 20, 2013, "a team of experts from the VA Loma Linda Healthcare System was convened to study the systems and processes involved in the care of ICU patient, Edwin Hotmire." (Exhibit "E")

32. The team found that "there was no standard operating procedure for the care and monitoring of dialysis catheters in the ICU." The team also found that there was a disconnect between the "Hemo App" and the CPRS (Computerized Patient Record System) which caused "a communication problem for the documentation of heparin administration."

33. Based on these admissions and the procedures that the team of experts stated would be established in the future as a result of their findings, the following conclusions about the care of Mr. Hotmire can be made:

  The dialysis nurse was not notified by the ICU nursing staff when the dialysis catheter had been inserted.

COMPLAINT - 8 -

The dialysis catheter was not monitored while Mr. Hotmire was in the ICU and there were admitted communication problems regarding the patency of the catheter for dialysis.

Heparin was not administered according to the dialysis protocol and the dosage of the Heparin administered was not documented.

ICU nursing personnel were not provided education regarding the maintenance of the dialysis catheter by the dialysis nurse.

The system for documenting Heparin administration was completely inadequate and this caused the overdose of Heparin administered to Mr. Hotmire to go unnoticed.

The digital interface between VISTA and CPRS was not adequately tested or maintained.

ICU and dialysis nursing staff did not document the infusion or the administration of heparin in the progress notes immediately.

The dialysis catheter was not labeled with the appropriate heparin dose.

Hand off communication that occurred between shifts and between the nursing staff responsible did not include information regarding the responsibility for Heparin infusion, administration and dose.

## CAUSES OF ACTION

34. Under the Federal Tort Claims Act, money damages are recoverable for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment 28 U.S.C. § 1346(b).

35. Government liability is determined by the law of the state where the act or omission occurred 28 U.S.C. §1346(b); Richards v. United States, 369 U.S. 1 (1962). The Government's liability is "in the same manner and to the same extent as a private individual under like circumstances ..." 28 U.S.C. § 2674.

36. As such, since the acts, omissions and events giving rise to this claim occurred in California, California law applies substantively to this claim which is based on the fact that while under the care of the nurses, physicians and other staff at the VA Loma Linda Healthcare System, Mr. Hotmire received negligent treatment which caused his death and the negligent treatment and death of Mr. Hotmire was also the cause of damages suffered by Venessa King.

## COUNT I — NEGLIGENCE

37. Plaintiff King realleges and reincorporates each and every allegation above as if fully set forth herein.

38. The established standard of care in California for healthcare providers requires that they exercise that degree of skill, knowledge, and care ordinarily possessed and exercised by other members of the profession acting under similar conditions and circumstances.

39. The Defendant had a duty to exercise that degree of skill, knowledge, and care ordinarily possessed and exercised by other members of the profession acting under similar conditions and circumstances.

40. The Defendant breached its duty of care to Mr. Hotmire.

41. At all times relevant to this Complaint, the Defendant had a duty to hire competent healthcare providers, administrators, employees, agents and staff in order to meet its standard of quality of care to its patients, including Mr. Hotmire. The Defendant knew, or should have known, that the medical staff of the facility were not properly trained, and/or supervised, in a manner necessary to provide a level of care for Mr. Hotmire that met all applicable legal requirements, that demonstrated the standard and degree of care and skill required of competent health care providers, and was consistent with the expertise that the Defendant presented to the community at large.

42. The Defendant breached its duty by negligently hiring incompetent, inexperienced and/or unqualified healthcare providers, administrators, employees, agents and staff .

43. The Defendant had a duty to retain only competent and adequately trained healthcare providers, administrators, employees, agents and staff in order to meet its standards of quality of care of its patients, including Mr. Hotmire.

44. The Defendant breached its duty by negligently retaining incompetent, inexperienced, unqualified and/or inadequately trained healthcare providers, administrators, employees, agents and staff.

45. The Defendant had a duty to provide adequate equipment, supplies and procedures in the treatment of Mr. Hotmire.

46. The Defendant breached its duty by providing inadequate equipment, supplies and procedures in the treatment of Mr. Hotmire.

47. The Defendant had a duty to exercise the degree of skill, knowledge, and care ordinarily possessed and exercised by other members of the profession acting under similar conditions and circumstances. As such, the Defendant had a duty to monitor the amount of heparin administered to Mr. Hotmire, document the amount and dosage of heparin administered to Mr. Hotmire and communicate this information to all relevant health care providers treating Mr. Hotmire, and a duty to prevent an overdose of heparin from being administered to Mr. Hotmire.

48. The Defendant also had a duty to ensure that there was a standard operating procedure for the care and monitoring of dialysis catheters, ensure that all health provider personnel were provided education regarding the maintenance of dialysis catheters, ensure that all systems and equipment used in patient care were adequately tested and maintained, ensure that ICU and dialysis nursing staff documented the infusion or the administration of heparin in the progress notes immediately, ensure that dialysis catheters were labeled with the appropriate heparin dose and that hand off communication that occurred between shifts and between the nursing staff responsible would include information regarding the responsibility for heparin infusion, administration and dose.

49. Furthermore, the defendant had a duty to ensure that blood products, of appropriate blood type for emergency transfusion were readily available prior to commencing any treatment in which they might be required, such as hemodialysis,

and ensure that the blood bank was able to be reached quickly in an emergency situation.

50. The Defendant breached its duty to exercise the degree of skill, knowledge, and care ordinarily possessed and exercised by other members of the profession acting under similar conditions and circumstances by failing to monitor the amount of heparin administered to Mr. Hotmire, failing to document the amount and dosage of heparin administered to Mr. Hotmire and communicate this information to all relevant health care providers treating Mr. Hotmire, and failing to prevent an overdose of heparin from being administered to Mr. Hotmire.

51. The Defendant also breached its duty by failing to ensure that there was a standard operating procedure for the care and monitoring of dialysis catheters, failing to ensure that all health provider personnel were provided education regarding the maintenance of dialysis catheters, failing to ensure that all systems and equipment used in patient care were adequately tested and maintained, failing to ensure that ICU and dialysis nursing staff documented the infusion or the administration of heparin in the progress notes immediately, failing to ensure that dialysis catheters were labeled with the appropriate heparin dose and that hand off communication that occurred between shifts and between the nursing staff responsible would include information regarding the responsibility for heparin infusion, administration and dose.

52. Furthermore, the Defendant breached its duty to ensure that blood products, of appropriate blood type for emergency transfusion were readily available prior to commencing any treatment in which they might be required, such as hemodialysis, and failed to ensure that the blood bank was able to be reached quickly in an emergency situation.

53. As a direct and proximate result of Defendant's negligence, Mr. Hotmire bled to death and experienced significant pain and suffering prior to his death.

54. The acts and/or omissions set forth above would constitute a claim under the law of the State of California.

55. The Defendant is liable pursuant to 28 U.S.C. 1346(b)(l).

## COUNT II – WRONGFUL DEATH

56. Plaintiff King realleges and reincorporates each and every allegation above as if fully set forth herein.

57. As a direct and proximate result of the Defendant's aforementioned negligence, Decedent Mr. Hotmire died and experienced significant pain and suffering prior to his death.

58. The acts and/or omissions set forth above would constitute a claim under the law of the State of California.

59. The Defendant is liable pursuant to 28 U.S.C. 1346(b)(l).

## COUNT III - VICARIOUS LIABILITY, RESPONDEAT SUPERIOR, OSTENSIBLE AGENCY AND/OR AGENCY

60. Plaintiff King realleges and reincorporates each and every allegation above as if fully set forth herein.

61. At all times relevant to this case, the directors, officers, operators, administrators, employees, agents, and staff were employed by and/ or acting on behalf of the Defendant.

62. At all relevant times to this Complaint, the directors, officers, operators, administrators, employees, agents and staff acted within their respective capacities and scopes of employment for the Defendant.

63. The directors, officers, operators, administrators, employees, agents and staff negligently and/or recklessly, directly and proximately caused the death of Mr. Hotmire, including both acts of omission and acts of commission.

64. As a direct and proximate result of Defendant's negligence, Mr. Hotmire bled to death and experienced significant pain and suffering prior to his death.

65. As a direct and proximate result of witnessing Defendant's negligent treatment of Mr. Hotmire, Ms. King suffered and continues to suffer serious emotional distress.

66. The acts and/or omissions set forth above would constitute a claim under the law of the State of California.

67. The Defendant is liable pursuant to 28 U.S.C. 1346(b)(l).

### COUNT IV – NEGLIGENCE UNDER RES IPSA LOQUITUR

68. Plaintiff King realleges and reincorporates each and every allegation above as if fully set forth herein.

69. Per California law, under the doctrine of Res Ipsa Loquitor, the fact that the Defendant was negligent and that this negligence caused the harm to the plaintiff may be proven if the plaintiff can prove all of the following:

1. That plaintiff's harm ordinarily would not have occurred unless someone was negligent;

2. That the harm occurred while plaintiff was under the care and control of the Defendant; and

3. That plaintiff's voluntary actions did not cause or contribute to the events that harmed him.

70. Under the doctrine of Res Ipsa Loquitor, the Defendant was negligent and this negligence caused the harm to the plaintiff because:

1. Mr. Hotmire's death by acute hemorrhage during a hemodialysis procedure ordinarily would not have occurred unless someone was negligent;

2. The VA Loma Linda Healthcare System and the health care providers that treated Mr. Hotmire had exclusive control of all instrumentalities that caused his death, and his death occurred while he was under the care and control of the Defendant; and

3. Mr. Hotmire's voluntary actions did not cause or contribute to the events that caused his death.

71. The acts and/or omissions set forth above would constitute a claim under the law of the State of California.

72. The Defendant is liable pursuant to 28 U.S.C. 1346(b)(l).

### COUNT V – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

73. Plaintiff King realleges and reincorporates each and every allegation above as if fully set forth herein.

74. Venessa King had a very close relationship with Mr. Hotmire and Mr. Hotmire considered her his granddaughter and Ms. King referred to herself as his granddaughter as well. Mr. Hotmire granted Ms. King Power of Attorney over his affairs and medical treatment and Ms. King signed the medical consent forms on behalf of Mr. Hotmire under this authority during his treatment at the VA Hospital. Furthermore, Venessa King is Mr. Hotmire's successor in interest under California Code of Civil Procedure §§ 377.11 & 377.10.

75. Ms. King was also present at the scene when Mr. Hotmire was provided heparin because she had Power of Attorney over his affairs and Mr. Hotmire had delegated that she sign the required medical consent forms regarding his treatment. As such, before the dialysis procedure, in which Mr. Hotmire was administered heparin, began Ms. King signed a consent form on behalf of Mr. Hotmire in which consent was given to the hemodialysis procedure as well as to the use of blood products.

76. Furthermore, the consent form for the hemodialysis procedure explained that "The blood may be kept from clotting in the system with the use of blood thinners..."

77. Additionally, Mr. Hotmire's medical records show that a Procedure Note dated 4/19/13 and authored by Bazgha Ahmad states:

COMPLAINT - 17 -

> Mr. Hotmire required a central venous dialysis catheter for hemodialysis. Granddaughter (Vanessa) [sic] was consented at bedside. She understands the risks, including bleeding, damage to nearby structures, pneumothorax, arrythmia, and infection. The benefit is access for urgent hemodialysis. (Exhibit "G")

78. As such, Ms. King was aware that hemodialysis required the use of blood thinners which could lead to bleeding. However, Ms. King also understood that in the absence of negligence, the hemodialysis procedure would have a benefit to Mr. Hotmire and would not lead to his death.

79. The facts show that Ms. King was present when the overdose of heparin was administered to Mr. Hotmire. Ms. King was also aware that Mr. Hotmire was receiving negligent treatment because she had been informed of the proper procedure that should have been followed for the hemodialysis procedure. Ms. King had been provided this information when her informed consent to the procedure was sought by the healthcare providers.

80. Furthermore, the facts show that Ms. King was aware that Mr. Hotmire had bled to death, because as stated in the report of Dr. Stephanie Maroney, approximately one liter of Mr. Hotmire's blood had pooled onto the bed and Mr. Hotmire had become unresponsive. The facts show that Ms. King observed this blood on the bed around the time that Mr. Hotmire became unresponsive.

81. As a direct and proximate result of witnessing the negligent medical care Mr. Hotmire received and witnessing his resulting fatal hemorrhaging, Ms. King suffered serious emotional distress. In fact, Ms. King suffered serious emotional distress that was so severe that she required medical treatment and was prescribed medication for

depression and anxiety and was also taken off work and out of school by order of her physician for several months, which caused her to incur financial damages. (Exhibit "F")

82. The damages sustained by Ms. King are separate and distinct from the damages sustained by Mr. Hotmire.

84. The acts and/or omissions set forth above would constitute a claim under the law of the State of California.

85. The Defendant is liable pursuant to 28 U.S.C. 1346(b)(l).

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, does hereby pray that judgment be entered in his favor and against the Defendant as follows:

1. For economic and noneconomic damages in the amount of $1,500,000.00 or according to proof.
2. For all medical expenses according to proof;
3. For all funeral expenses according to proof;
4. For attorney's fees, unilaterally to PLAINTIFF;
5. For costs of suit, including expert costs;
6. For other damages that may be proper and allowable under the law;
7. For such other and further relief as the court deems just and proper.

Respectfully submitted,

DATED: March 30, 2015

_____
Daniel O. Ajeigbe, Esq.
Attorney for Plaintiff
Venessa King